IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VIVIAN JOAN ROE,<br>   *Plaintiff*, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§<br>§ | Case No.: |
| BOYS & GIRLS CLUBS OF COLLIN COUNTY, INC.,<br>   *Defendant*. | §<br>§<br>§ | |

**COMPLAINT**

Plaintiff Vivian Joan ("Roe") accuses her former employer, Defendant Boys & Girls Clubs of Collin County, Inc. ("BGCCC"), of violating both federal and state law as set forth below.

**This is an Employment Discrimination Case. It Involves a Discharge.**

1.    BGCCC fired Roe. BGCCC did this in August 2023.

2.    BGCCC tries to mask its unlawful employment practice by claiming that Roe "retired." That is false. Roe did not "retire." Roe never "retired."

3.    BGCCC no longer has Roe on its payroll. That was never Roe's decision, or wish, for this to happen.

4.    BGCCC's decision to fire Roe was unlawfully motivated by Roe's age. Accordingly, in Count One Roe alleges that BGCCC violated the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA"). In Count Two, Roe alleges that BGCCC violated the provision against age discrimination found in TEX. LAB. CODE § 21.051(1) ("Discrimination by Employer").

## Parties

5. Plaintiff Vivian Joan Roe ("Roe") is an individual who is currently a citizen and resident of the State of Texas.

6. Defendant Boys & Girls Clubs of Collin County, Inc. ("BGCCC") –

    A. is currently an active Texas corporation.

    B. had twenty or more employees for each working day in each of twenty or more calendar weeks in Year 2022.

    C. had twenty or more employees for each working day in each of twenty or more calendar weeks in Year 2023.

    D. operates out of an office at 1301 Central Expressway South, Suite 117, Allen, TX 75013, 469.888.4620 (hereinafter "Allen Office").

    E. may be served with process by serving its registered agent, **Mr. Torsten Seifert**. He is located at **1301 Central Expressway South, Suite 117, Allen, Texas 75017.** Alternatively, he may be served wherever else he may be found.

## Jurisdiction

7. This Court has original subject matter jurisdiction over this action. That is because Roe's ADEA claim, presented in Count One, presents a federal question. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343(a)(4) ("civil rights").

8. This Court has supplemental jurisdiction over Roe's claim under TEX. LAB. CODE § 21.051(1), found in Count Two. That is because Count Two is so related to Roe's ADEA claim in Count One that the two claims form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. §1367(a).

**Venue**

9. Venue is proper in this judicial district. That is because a substantial part of the events or omissions giving rise to Roe's ADEA claim occurred here. *See* 28 U.S.C. § 1391(b)(2).

**Material Facts**

10. According to BGCCC's records, Roe's date of birth is in Year 1948.

    A. Roe gives only the year of her birth so as to comply with FED. R. CIV. P. 5.2(a)(2) ("Privacy Protection for Filings Made with the Court").

11. BGCCC put Roe on its payroll in Year 2006.

12. BGCCC put Roe on its payroll in August 2006.

13. BGCCC put Roe on its payroll effective August 1, 2006.

    A. In July 2006, Roe started working for BGCCC as a "temp."

14. In 2009, BGCCC promoted Roe from "Accounting Manager" to "Vice President of Finance."

15. In 2010, BGCCC changed Roe's title again, this time to "Chief Financial Officer" or "CFO."

    A. Roe held the title "Chief Financial Officer" without interruption until June 2023.

16. At no time from August 1, 2006, to August 31, 2023, did BGCCC ever have any written policy mandating any retirement age.

17. At no time from January 1, 2022, to Roe's last day on BGCCC's payroll was BGCCC ever aware of Roe suffering any disability that prevented her from performing any of her essential job duties for BGCCC.

18. At no time from January 1, 2022, to Roe's last day on BGCCC's payroll was

BGCCC ever aware of Roe losing or no longer possessing any necessary professional license that prevented her from performing any of her essential job duties for BGCCC.

19. At no time from January 1, 2022, to Roe's last day on BGCCC's payroll was BGCCC ever aware of Roe suffering from any occurrence that rendered her unfit for the job she held there.

20. In June 2020, BGCCC hired Marianne Radley as its Chief Executive Officer or "CEO."

21. In December 2020, Radley met face-to-face and one-on-one with Roe, at which time she asked Roe how old she (Roe) was.

    A. Roe responded by telling Radley her age.

22. During the same conversation referenced in Paragraph 21 *supra,* Radley asked Roe when Roe planned on retiring.

    A. Roe responded by telling Radley she did not have an end date in mind.

23. During the same conversation referenced in Paragraph 21 *supra,* Radley told Roe that she wanted Roe to retire in Year 2021.

24. During the same conversation referenced in Paragraph 21 *supra,* Radley told Roe that she, Radley, did not feel bad about having Roe retire because Roe was already over the "customary" retirement age.

25. Roe continued her employment with BGCCC after the her conversation with Radley set forth in Paragraph 21 *supra.*

26. In 2021, the Board Chair for BGCCC was a certain Mr. Jerron Smith.

    A. Around February 2022, Smith resigned from his position as Board Chair of BGCCC.

   B. Around February 2022, Smith resigned from his seat on the Board of BGCCC.

   C. Around the time of his resignation(s) set forth in subparts "A" and "B" of this Paragraph, Smith submitted a complaint to BGCCC.

    (i) One of Smith's complaints was that BGCCC had been practicing age discrimination in its policies and procedures.

27. Radley resigned from BGCCC.

28. Radley resigned from BGCCC in August 2022.

29. Radley's last day of work at BGCCC was in September 2022.

30. Radley's last day of work at BGCCC was September 15, 2022.

31. After Radley's resignation, BGCCC was managed by a certain Mr. Torsten Seifert, its Acting Chief Executive Officer and Chairman of its Board.

32. In early 2023, BGCCC posted the job of Accounting Manager.

33. BGCCC hired Ms. Jeretta Kaigler to fill the job of Accounting Manager.

34. It was in February 2023 when BGCCC hired Kaigler for the job of Accounting Manager.

35. It was on February 3, 2023 when BGCCC hired Kaigler for the job of Accounting Manager.

36. Within two weeks of BGCCC hiring Kaigler, a certain Mr. John Hoffman – he was BGCCC's Finance Chair at the time -- met face-to-face and one-on-one with Roe.

   A. During this meeting, Hoffman told Roe that BGCCC expected Roe to train Kaigler with a view towards Kaigler taking Roe's place once Roe decided to leave BGCCC.

37. Around the same time, Hoffman also met with Kaigler face-to-face and one-on-

one.

    A.    During this meeting, Hoffman told Kaigler that BGCCC had hired her, Kaigler, to take Roe's place.

    B.    Kaigler shared subpart "A" of this Paragraph with Roe.

38.    In April 2023, Seifert sent Roe an email. In the email, Seifert informed Roe that Roe would go from a full-time to part-time employment. Per the email, this change from full-time to part-time employment would take effect on April 30, 2023.

    A.    Later, Seifert moved the effective date of this change from April 30, 2023 to May 31, 2023.

    B.    Seifert never gave Roe any choice in his decision.

    C.    Roe never expressed any agreement with Seifert's decision set forth in this Paragraph 38.

39.    In the same email referenced in Paragraph 38 *supra,* Seifert informed Roe that Roe's part-time job would end on August 31, 2023, at which point Roe would reach "full retirement."

40.    During a staff meeting held on April 3, 2023, Seifert announced Roe's "retirement."

41.    On June 6, 2023, BGCCC, by and through Seifert, demoted Roe from Chief Financial Officer to Account Specialist.

42.    On June 6, 2023, Seifert emailed a certain Ms. Shiron Johnson.

    A.    Johnson's job duties at BGCCC included updating payroll and personnel records to reflect certain status changes.

43.    Upon receipt of the email from Seifert referenced in Paragraph 42 *supra,* Johnson prepared a "Personnel Action Form."

    A. This form shows BGCCC, by and through Seifert, changing Roe's title from Chief Financial Officer to "Accounting Specialist."

    B. This form shows BGCCC, by and through Seifert, changing Roe's status from a full-time employee to a part-time employee.

    C. Johnson gave Roe a copy of a completed "Personnel Action Form."

    D. Roe never signed the "Personnel Action Form" that Johnson had given to her.

    E. Roe never turned in the "Personnel Action Form" that Johnson had given to her.

    F. Roe told Johnson that she, Roe, did not do anything to lose her job.

      (i) Roe did this on or about June 6, 2023.

    G. Reponding to Roe's words set forth in subpart "F" of this Paragraph, Johnson told Roe that she, Roe, should contact the U.S. Equal Employment Opportunity Commission ("EEOC").

  44. Kaigler was present when Johnson uttered the words set forth in Paragraph 43.G *supra*.

  45. BGCCC hired a new Chief Executive Officer in August 2023.

  46. BGCCC hired a new Chief Executive Officer effective August 16, 2023.

    A. The name of the new Chief Executive Officer was Ms. Shawn Wills.

  47. Roe met with Wills on August 21, 2023 and August 28, 2023. Both meetings took place in Wills's office at the Allen Office.

    A. During their August 21, 2023 meeting, Wills told Roe that she, Wills, had not heard anything negative about Roe's work ethic.

  B. During their August 21, 2023 meeting, Wills told Roe that she, Wills, had not heard anything negative about Roe's job performance.

  C. During their August 28, 2023 meeting, Wills told Roe that the BGCCC Board would not change Roe's "retirement."

  D. During their August 28, 2023 meeting, Wills told Roe the following:

   (i) that she had discussed with BGCCC's Board whether Roe should stay employed with BGCCC on a part-time basis.

   (ii) that the Board rejected keeping Roe on a part-time basis.

   (iii) that Wills could not go against the Board.

   (iv) that Roe's "retirement" stood.

   (v) that Roe's employment with BGCCC would end on August 31, 2023.

48. The last day Roe showed up for work at BGCCC was August 30, 2023, not August 31, 2023.

49. On August 30, 2023, BGCCC did an "exit interview" of Roe. There were three attendees – Wills, Johnson, and Roe.

  A. Johnson completed a form called an "Exit Interview Questionnaire." This form consists of four pages.

  B. Johnson signed the second to last page of the "Exit Interview Questionnaire," where she, Johnson, is designated as the "Interviewer."

  C. Johnson also signed the last page of the "Exit Interview Questionnaire."

50. The first and last pages of this "Exit Interview Questionnaire" are attached to this pleading as **Exhibit A**. They are incorporated by reference for all purposes.

      A.      The undersigned counsel has highlighted the first page in yellow in two different places.

51.      BGCCC's decision to fire Roe took effect on August 31, 2023. BGCCC called this a "voluntarily retirement." However --

      A.      Roe did not "retire."

      B.      Roe certainly did not "retire voluntar[ily]."

52.      Kaigler assumed a substantial portion of the job duties previously performed by Roe.

      A.      When this happened, Kaigler had a different job title than the one previously held by Roe.

53.      According to BGCCC's records, Roe was 75 years of age on August 31, 2023.

54.      According to BGCCC's records, Kaigler was 47 years of age on August 31, 2023.

55.      When Roe filed this pleading, Kaigler was no longer on BGCCC's payroll.

56.      Due to BGCCC's conduct, including the foregoing, Roe has suffered economic losses. Roe will likely continue to suffer such losses in the future.

57.      Due to BGCCC's conduct, including the foregoing, Roe has suffered mental anguish. She will likely continue to suffer such mental anguish in the future.

## COUNT ONE:
### Violation of ADEA; Discrimination/Discharge

58.      Roe re-alleges and incorporates by reference all allegations set forth in paragraphs 10 through 57.

59.      Roe was an "employee" of BGCCC, as that term is defined in 29 U.S.C. § 630(f), from her date of hire there to the last day of her employment there.

60. BGCCC was an "employer" of Roe, as that term is defined in 29 U.S.C. § 630(b), from the date when it put Roe on its payroll to the last day of Roe's employment there.

61. According to the BGCCC's records, Roe's age on August 31, 2023, was more than forty years. 29 U.S.C. § 631(a).

62. The ADEA states that *"[i]t shall be unlawful for an employer ... to discharge any individual ... because of such individual's age[.]"* 29 U.S.C. § 623(a)(1). BGCCC violated this statute when it discharged Roe.

63. Roe presents a *prima facie* case of discrimination that violates the ADEA. First, when BGCCC fired her, Roe was well above the 40-year-old floor set forth in 29 U.S.C. § 631(a). *See* ¶¶ 10, 53. Second, when BGCCC fired her, Roe was "qualified" for prima facie purposes as defined by this circuit. *See, e.g., Bienkowski v. American Airlines,* 851 F.2d 1503, 1506 fn. 3 (5th Cir. 1988). *See* ¶¶ 16-19. Third, a discharge qualifies as an actionable adverse employment action as the plain language of the ADEA in 29 U.S.C. § 623(a)(1) expressly uses the word "discharge." Finally, Kaigler, who assumed a substantial portion of the job duties previously performed by Roe, is more than 20 years younger than Roe. *See* ¶¶ 53, 54.

64. All prerequisites to the filing of this ADEA claim have been fulfilled. *First*, on January 3, 2024, Roe digitally signed charge of discrimination number 450-2023-09224 ("Charge") with the EEOC. 29 U.S.C. § 626(d)(1)(B) (three hundred days). *Second*, more than 60 days have elapsed from the filing of the Charge to the filing of this lawsuit, and at no time during those 60 days, nor any time thereafter, did EEOC bother to commence an action to enforce Roe's rights. *Id.* On July 9, 2024, the EEOC issued a one-page document titled "Dismissal of Charge." This document advised Roe in pertinent part that "[i]f you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal . . . court, **your lawsuit must be filed**

**WITHIN 90 DAYS of your receipt of this notice.**" (Bold font in original). When it filed this action, Roe satisfied this requirement.

65. Roe is entitled to an award of back pay, interest on back pay, reinstatement or in the alternative front pay, the value of lost employment benefits, and all other appropriate legal and equitable relief that is within the scope of 29 U.S.C. § 626(b).

66. The violation of the ADEA by BGCCC was willful. Roe is therefore entitled to an award of liquidated damages in addition to equitable relief. 29 U.S.C. § 626(b).

67. Roe is entitled to recover reasonable attorney's fees and costs pursuant to 29 U.S.C. § 626(b).

## COUNT TWO:
### TEX. LAB. CODE § 21.051(1): Discrimination (Discharge)

68. Roe re-alleges and incorporates by reference all allegations set forth in paragraphs 10 through 57.

69. Section 21.051 of the Texas Labor Code reads in pertinent part, *"An employer commits an unlawful employment practice if because of . . . age the employer: (1) . . . discharges an individual[.]"* BGCCC violated this statute when it fired Roe.

70. Roe presents a *prima facie* case of discrimination that violates TEX. LAB. CODE § 21.051(1). First, when BGCCC fired her, Roe was well above the 40-year-old floor set forth in TEX. LAB. CODE § 21.101. *See* ¶¶ 10, 53. Second, when BGCCC fired her, Roe was "qualified" for prima facie purposes as defined by this circuit. *See, e.g., Bienkowski v. American Airlines,* 851 F.2d 1503, 1506 fn. 3 (5th Cir. 1988). *See* ¶¶ 16-19. Third, a discharge qualifies as an actionable adverse employment action as the plain language of section 21.051(1) uses the word "discharge." Finally, Kaigler, who assumed a substantial portion of the job duties previously performed by Roe,

is more than 20 years younger than Roe. *See* ¶¶ 53, 54.

71. BGCCC has satisfied all conditions precedent to the filing of this Count Two. *First*, the Charge that Roe filed with the EEOC was "dual filed" with the Civil Rights Division of the Texas Workforce Commission (TWC-CRD) pursuant to the EEOC-TWC-CRD Workshare Agreement. *See also* TEX. LAB. CODE §21.201 (referring to the filing of a "Complaint"). *Second*, Roe filed the Charge, a/k/a Complaint, on January 3, 2024, which is fewer than 180 days from August 31, 2023, which is when BGCCC fired her. *Id.* at §21.201. *Third,* the Complaint was on file at EEOC for at least 180 days and was not resolved, after which Roe requested, in writing, that TWC-CRD provide her with a written notice of her right to file a civil action. *Id.* at §21.252. On July 23, 2024, TWC-CRD did issue Roe a notice of right to file civil action, *id.,* and Roe has filed this lawsuit within 60 days of receiving same. *Id.* at §21.254.

72. By reason of BGCCC's violation of TEX. LAB. CODE §21.051(1), Roe is entitled to receive an award of wages and employment benefits in the past ("back pay"), plus reinstatement or in the alternative front pay, and other appropriate equitable relief.

73. Also by reason of BGCCC's violation of TEX. LAB. CODE §21.051(1), Roe is entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74. Roe is entitled to an award of punitive damages against BGCCC pursuant to TEX. LAB. CODE § 21.2585(b) because BGCCC engaged in discriminatory practices with malice or with reckless indifference to Roe's state-protected rights.

75. Roe seeks recovery of all interest that is lawfully available to her.

76. As the prevailing party, Roe is entitled to a reasonable attorney fee, as well as reasonable expert fees, as part of the costs. TEX. LAB. CODE §21.259.

### Jury Demand

77. Roe demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

### Request for Relief

WHEREFORE, Plaintiff Vivian Joan Roe asks that Defendant Boys & Girls Clubs of Collin County, Inc. ("BGCCC") appear and answer, and that on trial of this action Roe have final judgment against BGCCC as set forth hereinabove, and for all such other and further relief to which Roe is justly entitled.

Dated: August 16, 2024.

Respectfully submitted,

By: */s/ Wade A. Forsman*

**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
Tel.: 903.689.4144 East Texas
Tel.: 972.499.4004 Dallas Fort Worth
Fax: 903.689.7001
903.243.1775 cell
wade@forsmanlaw.com

**Attorney for Plaintiff Vivian Joan Roe**

# Exhibit A



**BOYS & GIRLS CLUBS**
OF COLLIN COUNTY

# Exit Interview Questionnaire

We would appreciate you taking about 8-10 minutes to answer the following questions as honestly as possible. Your individual responses are treated as confidential and will not become part of your personnel file. The information that you provide will be considered confidential; typically, this information is share as feedback with management, however if there is any feedback you would like to provide that you prefer not to be shared with anyone else, please do not hesitate to let this be known.

We believe that the information is of vital importance and will assist in analyzing our employee retention and turnover. Thank you for your cooperation!

| Name Vivian Joan Roe | Employment Date 08/01/2006 |
|---|---|
| Department Accounting | Termination Date 08/30/2023 |
| Position Accounting Specialist | Manager Shawn Wills |

## What prompted you to seek alternative employment?

| | |
|---|---|
| ☐ Type of Work | ☐ Quality of Supervision |
| ☐ Compensation | ☐ Work Conditions |
| ☐ Lack of Recognition | ☐ Family Circumstances |
| ☐ Company Culture | ☐ Career Advancement Opportunity |
| ☐ Business/Product Direction | ☑ Other: Retirement (involuntary) |

Before making your decision to leave, did you investigate other options that would enable you to stay?
☑ Yes ☐ No   If "yes", describe: Not her decision

What did you think of your supervision in regard to the following?

| | Almost always | Sometimes | Never | Comments |
|---|---|---|---|---|
| Demonstrated fair and equal treatment | ☐ | ☑ | ☐ | unhappy w/ the way this |
| Provided recognition on the job | ☐ | ☑ | ☐ | Most of the CEO's over |
| Developed cooperation and teamwork | ☑ | ☐ | ☐ | #'s Position. I always w |
| Encouraged/listened to suggestions | ☑ | ☐ | ☐ | Yes, I believe they were |

1 | P a g e

**HR USE: Have information completed prior to meeting**

**Which benefits will be termed:** Employee doesn't have benefits through BGCA - only 401k and LTD
☐ Medical ☐ Dental ☐ Vision ☐ HRA ☐ FSA ■ LTD ☐ Aflac ☐ COBRA ■ 401K

**Note:**
- ☐ Medical, dental, and vision will term at the end of the month.
- ☐ FSA will term on term date.
- ☐ Aflac will term on term date.
- ■ Employee must call Milliman to discuss specifics and rollover options for 401k.
    - o Milliman Contact Information: Benefits Service Center - 1.866.398.3408 or use web chat on www.BGCARetirementPlan.com
    - o Available Monday – Friday from 8am to 8pm EST
- ☐ HR must term HRA and FSA
- ☐ COBRA will be mailed to employee once the employee's benefits have been termed. Employee must follow instructions within packet. Any questions regarding COBRA, contact COBRA administrator which will be listed in the packet.

**Last pay date will be:** 09/15/23 - Last Paycheck hours worked (8/25-8/30) including 48hrs of accrued PTO and 1st payment of Rollover PTO (see Exit Letter).

**Timesheet has been submitted:** ☐ YES ■ NO, when will the employee submit their timesheet?
The end of this payroll period, by Sept 11th.

**Confirm Current Address and Personal Email:** If information is correct in system and HR has checked the system, write "in system".

**Note:** Should employee change their address, they must notify HR to ensure that we mail their W2s to the correct address.

Address: No changes to address - please use the address listed in PayCom

Email: _____

Phone: _____

COMPLETED BY: *[signature]*

4 | Page